**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raven Thoman, | No. CV-23-00413-TUC-JGZ (EJM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Martin O'Malley,[1] Commissioner of Social Security, | |
| Defendant. | |

Currently pending before the Court is Plaintiff Raven Thoman's Opening Brief (Doc. 17). Defendant filed his Answering Brief ("Response") (Doc. 19), and Plaintiff replied ("Reply") (Doc. 20). Plaintiff brings this cause of action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). Compl. (Doc. 1).

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[2] this matter was referred to Magistrate Judge Markovich for Report and Recommendation. Based upon the pleadings of the parties and the administrative record submitted to the Court, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision.

---

[1] The Court takes judicial notice that Kilolo Kijakazi is no longer Acting Commissioner of the Social Security Administration ("SSA"). The Court will substitute the new Commissioner of the SSA, Martin O'Malley, as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. *See also* 42 U.S.C. § 405(g).

[2] Rules of Practice of the United States District Court for the District of Arizona.

## I.    PROCEDURAL BACKGROUND

On April 5, 2021, a Title XVI application for Supplemental Security Income ("SSI") was protectively filed on behalf of Plaintiff, alleging disability as of June 24, 2003, due to Attention-Deficit/Hyperactivity Disorder ("ADHD"), depression, and a heart defect.  *See* Administrative Record ("AR") at 16, 21, 86–88, 100, 102–103, 114, 234–35, 251, 253, 262, 282, 291.[3]  The Social Security Administration ("SSA") denied his application on July 28, 2021.  *Id.* at 16, 86–101, 120–29.  On August 10, 2021, Plaintiff filed a request for reconsideration, and on December 27, 2021, SSA denied Plaintiff's application upon reconsideration.  *Id.* at 16, 102–115, 130–38, 284–90.  On January 27, 2022, Plaintiff filed his request for hearing.  *Id.* at 12, 16, 140–43.  On September 1, 2022, a telephonic hearing was held before Administrative Law Judge ("ALJ") Tin Tin Chen.  AR at 16, 41–85.  On October 18, 2022, the ALJ issued an unfavorable decision.  *Id.* at 13–34.  On November 8, 2022, Plaintiff filed a request to reopen his current claim, in order to submit vocational expert interrogatories, the answers to which could then be considered.  *Id.* at 317–23.  On December 16, 2022, Plaintiff requested review of the ALJ's decision by the Appeals Council, and on July 28, 2023, review was denied.  *Id.* at 1–8, 231–33, 324–26.  On August 30, 2023, Plaintiff filed this cause of action.  Compl. (Doc. 1).

## II.    STANDARD OF REVIEW

The factual findings of the Commissioner shall be conclusive so long as they are based upon substantial evidence and there is no legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations

---

[3] Page numbers refer to the page numbers demarcated in the Administrative Record rather than the Court's Case Management/Electronic Case Files ("CM/ECF").

omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). "Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019) (citations omitted) (alterations in original).

Substantial evidence is "'more than a mere scintilla[,] but not necessarily a preponderance.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)); *see also Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). Moreover, the court may not focus on an isolated piece of supporting evidence, rather it must consider the entirety of the record weighing both evidence that supports as well as that which detracts from the Secretary's conclusion. *Tackett*, 180 F.3d at 1098 (citations omitted). Additionally, the Court will only review issues raised by Plaintiff in this cause of action. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

## III.    ANALYSIS

### A.    *The Five-Step Evaluation*

The Commissioner follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). This process is defined as follows: Step One asks is the claimant "doing substantial gainful activity[?]" 20 C.F.R. § 404.1520(a)(4)(i). If yes, the claimant is not disabled. Step Two considers if the claimant has a "severe medically determinable physical or mental impairment[.]" 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled. Step Three determines

whether the claimant's impairments or combination thereof meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1.  20 C.F.R. § 404.1520(a)(4)(iii).  If not, the claimant is not disabled.  Step Four considers the claimant's residual functional capacity and past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If claimant can still do past relevant work, then he or she is not disabled.  Step Five assesses the claimant's residual functional capacity, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If it is determined that the claimant can make an adjustment to other work, then he or she is not disabled.  *Id.*

In the instant case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of April 5, 2021.  AR at 21.  At step two of the sequential evaluation, the ALJ found that "[t]he claimant has the following severe impairments: PTSD; ADHD combined type, specific learning disability in mathematics; gender dysphoria; congenital heart defect s/p successful repair; [and] asthma (20 CFR 416.924(c) and 416.920(c))[,]" and that these severe impairments have continued since he turned eighteen (18).  *Id.* at 21, 26.  At step three, the ALJ further found that "[p]rior to attaining age 18, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926)."  *Id.* at 21; *see also* AR at 22 (citing 20 CFR 416.924(d) & 416.926a).  Based on this finding, the ALJ found that "the claimant was not disabled prior to attaining age 18 (20 CFR 416.924(a))."  AR at 26.  The ALJ confirmed her step three determination for the period after Mr. Thoman turned 18.  *Id.* (citing 20 CFR 416.920(d), 416.925 & 416.926).  Prior to step four and "[a]fter careful consideration of the entire record," the ALJ determined that "since attaining age 18, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except claimant can perform simple, routine work, no fast paced work environment, no static pace work such as assembly line, would be off task less than 10% of the work day; must work in a calm work environment free of sudden and loud noises; requires occasional repeated directions, particularly when new

tasks are assigned; can occasionally reach overhead with the left upper extremity, [and] may never be exposed to concentrated dust, fumes, or pulmonary irritants." *Id.* at 28–29. At step four, the ALJ found that "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968)." *Id.* at 32. At step five, the ALJ found that after "[s]ince the date the claimant attained age 18, [and] considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a)." *Id.* Accordingly, the ALJ determined that Plaintiff was not disabled. AR at 16, 33.

### B. Request to Reopen

Following the ALJ's October 18, 2022, unfavorable decision, Plaintiff filed a request to reopen his current claim on November 8, 2022, in order to submit vocational expert interrogatories, the answers to which could then be considered. *Id.* at 13–34, 317–23. Plaintiff asserts that "the ALJ's refusal to consider the merits of a request to reopen to consider probative evidence constitutes harmful error." Opening Br. (Doc. 17) at 8. This Court lacks jurisdiction to review Plaintiff's request to reopen.

"Any individual, after any **final** decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g) (emphasis added). "A decision not to reopen a prior, final benefits decision is discretionary and ordinarily does not constitute a final decision; therefore, it is not subject to judicial review." *Udd v. Massanari*, 245 F.3d 1096, 1098–99 (9th Cir. 2001) (citing *Califano v. Sanders*, 430 U.S. 99, 107–09 (1977)); *see also* 20 C.F.R. § 416.1403(a)(5) (denial of a request to reopen is not subject to judicial review); 20 C.F.R. § 416.1488 (emphasis added) ("A determination, revised determination, decision, or revised decision **may** be reopened[.]). The exception to this general rule is the "rare instance[] where the Secretary's denial of a petition to reopen is challenged on

constitutional grounds." *Califano*, 430 U.S. at 109.

Here, Plaintiff focuses on the lack of a denial to reopen by the ALJ. Plaintiff relies on HALLEX I-2-9-10.A to support his contention that the ALJ had a duty "to at least consider and respond to [his] request[] to reopen[.]" Opening Br. (Doc. 17) at 7. This contention is without merit. "The Hearings, Appeals and Litigation Law (HALLEX) manual communicates guiding principles and procedures to hearing level and Appeals Council adjudicators, *i.e.*, administrative law judges (ALJ), attorney advisors, administrative appeals judges (AAJ), and appeals officers (AO), and to their support staff." HALLEX I-1-0-3. "[E]vidence that this is a purely internal manual can be seen in the fact that HALLEX was not published in either the Federal Register or the Code of Federal Regulations, indicating that the manual was not promulgated in accordance with the procedural requirements imposed by Congress for the creation of binding regulations and was not intended to be binding." *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000). "As HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual." *Id.* (citations omitted); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010) (citations omitted) ("HALLEX does not impose judicially enforceable duties on either the ALJ or this court.").

The Commissioner's regulations provide that:

A determination, revised determination, decision, or revised decision may be reopened —

   (a) Within 12 months of the date of the notice of the initial determination for any reason;

   (b) Within two years of the date of the notice of the initial determination if we find good cause, as defined in § 416.1489, to reopen the case; or

   (c) At any time if it was obtained by fraud or similar fault. In determining whether a determination or decision was obtained by fraud or similar fault, we will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which you may have had at the time.

20 C.F.R. § 416.1488 (2022). Furthermore, the regulations only provide for notice when a determination or decision is revised, there is no requirement that a notice be sent when the Commissioner decides not to reopen a case. *Compare* 20 C.F.R. § 416.1487 (reopening and revising determinations and decisions procedures), *with* 20 C.F.R. § 416.1492 (notice of revised determination or decision).

In general, a request to reopen applies to the decision from a previous application. *See, e.g., Klemm v. Astrue*, 543 F.3d 1139 (9th Cir. 2008); *Free v. Barnhart*, 67 Fed. Appx. 476 (9th Cir. 2003); *Handy v. Comm'r of Soc. Sec. Admin*, 2020 WL 5699001 (D. Ariz. Sept. 24, 2020); *Dixon v. Chater*, 954 F. Supp. 58 (E.D.N.Y. Feb. 8, 1997). In this case, Plaintiff sought to have the decision reopened after the ALJ issued an unfavorable decision, but prior to the expiration of the sixty (60) day period for Plaintiff to seek review with the Appeals Council. *See* 20 C.F.R. § 416.1468(a). Despite Plaintiff's assertion to the contrary, Plaintiff's request arguably should have been directed to the Appeals Council. *See Brodie v. Comm'r of Soc. Sec.*, 267 Fed. Appx. 662, 664 (9th Cir. 2008) ("Brodie was required to request a reopening of the ALJ's decision directly from the Appeals Council within twelve months of the Council's denial of review of that application."). In any event, the Appeals Council did consider Plaintiff's request when it denied review. *See* AR at 1–6 (noting that it considered the reasons stated in the request to reopen and making it part of the record).

### C.    *Job Availability and Plaintiff's RFC*

Plaintiff argues that the jobs the ALJ identified at Step Five exceed Plaintiff's RFC and posits that "there is evidence that jobs do not exist in significant numbers with the RFC that the ALJ gave, rendering this error harmful." Opening Br. (Doc. 17) at 9–12. The Court finds that substantial evidence supports the ALJ's decision.

At Step Five, the ALJ considers the claimant's residual functional capacity, age, education, and work experience to decide if he can make an adjustment to some other available job. 20 C.F.R. § 404.1520(a)(4)(v); *see also Gutierrez v. Colvin*, 844 F.3d 804, 806 (9th Cir. 2006) (reviewing Step Five procedure and describing residual functional

capacity as "what physical tasks the applicant can still perform despite his or her limitations"). "To aid in making this determination, the ALJ may rely on an impartial vocational expert to provide testimony about jobs the applicant can perform despite his or her limitations." *Id.* at 806–807 (citations omitted). "The *Dictionary of Occupational Titles*[, including its companion publication the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"),] . . . a resource compiled by the Department of Labor that details the specific requirements for different occupations, guides the analysis." *Id.* at 807; *see also* SSR 00-4p, 2000 WL 1898704 (2000). "A VE's estimate of the number of jobs available in the national economy is informed by the VE's experience and expertise, and may be based upon 'not only publicly available sources but also information obtained directly from employers and data otherwise developed from [the VE's] own experience in job placement or career counseling.'" *Wischmann v. Kijakazi*, 68 F.4th 498, 501 (9th Cir. 2023) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (citing SSR 00-4p, 65 Fed. Reg. 75759, 75760 (Dec. 4, 2000)). The Ninth Circuit Court of Appeals has "characterized uncontradicted VE job-numbers testimony as inherently reliable and ordinarily sufficient by itself to support an ALJ's step-five finding." *White v. Kijakazi*, 44 F.4th 828, 835 (9th Cir. 2022) (quotations and citations omitted).

At the administrative hearing, the ALJ asked the VE to consider a hypothetical individual with a tenth grade education, no past relevant work, and of claimant's age, who is limited to simple, routine, repetitive work; no fast paced work environment; no static pace work, such as assembly line; would be off task less than 10% of the work day; must work in a calm work environment free of sudden and loud noises; occasionally requires repeated directions, particularly in the immediate days surrounding the introduction of a new task or a new procedure; limited to the full range of light work, except can only occasionally reach overhead with the left upper extremity; and should never be exposed to concentrated dust, fumes, or pulmonary irritants. AR at 77–79. The VE opined that other work in the national economy would be available. *Id.* at 79. The

VE further opined that such an individual could work as a marker, Dictionary of Occupational Titled ("DOT") code 209.587-034, light exertional level, a Specific Vocational Preparation ("SVP") of 2, and unskilled, with approximately 137,000 jobs available in the national economy. *Id.* Next, the VE opined that such an individual could work as a cafeteria attendant, DOT code 311.677-010, light exertional level, an SVP of 2, unskilled, and with approximately 19,000 jobs in the national economy. *Id.* Finally, the VE opined that the hypothetical individual could work as an office helper, DOT code 239.567-010, light exertional level, an SVP of 2, unskilled, and with approximately 14,000 jobs in the national economy. *Id.* Counsel questioned the VE regarding the availability of jobs with respect to a hypothetical individual with varying degrees of restriction. AR at 79–81.

Following the ALJ's October 18, 2022, unfavorable decision, Plaintiff filed a request to reopen his current claim on November 8, 2022. *Id.* at 13–34, 317–23. "This request suggested that the vocational expert may not have considered all factors of the hypothetical question that the ALJ had presented and sought the opportunity to more fully explore the aspects of the hypothetical question that spoke to Mr. Thoman's abilities to adapt to work situations because of his mental limitations due to ADHD, PTSD, and depression." Opening Br. (Doc. 17) at 6 (citing AR 317–18). In support of this request, "counsel used the vocational tool JobBrowser Pro, published by SkillTRAN, to search for jobs with an SVP of 1 or 2, a reasoning level of 1 or 2, a strength level of sedentary or light, no presence of atmospheric conditions[], and filters related to several relevant 'temperaments' of different jobs[.]" *Id.* at 6–7 (citing AR 318, 320).

As an initial matter, the Court finds the Commissioner's assertion that Plaintiff waived review of this issue devoid of merit. The Commissioner relies on *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017); however, *Shaibi* held that waiver occurs "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency[.]" *Shaibi*, 883 F.3d at 1109. Plaintiff raised the issue before the Appeals Council, and it was considered. *See* AR at 1–6.

Further, when the Appeals Council accepts and considers new evidence in deciding a request for review, "that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

If there is a conflict between the occupational evidence provided by the VE and the DOT, the ALJ must resolve the conflict by eliciting "a reasonable explanation for the conflict" and providing "a basis for relying on the VE . . . testimony rather than on DOT information." SSR 00-4p, 2000 WL 1898704, at *2 (2000). "For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent." *Gutierrez*, 844 F.3d at 808; *see also Wischmann*, 68 F.4th at 505 (ALJ's duty to resolve conflict only arises if "the purportedly inconsistent evidence is both significant and probative").

Here, Plaintiff's evidence provides "no basis to conclude that these results qualified as significant probative evidence." *Wischmann*, 68 F.4th at 506 (quoting *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1194 (9th Cir. 2022)). Plaintiff asserts that the ALJ's RFC "contains elements that appear to implicate the temperaments factor found in the 1991 Revised Handbook for Analyzing Jobs, on which the Dictionary of Occupational Titles is based." AR at 317. It is undisputed that "the Social Security Administration has indicated that it does not take judicial notice of the temperaments factor of job analysis in the Revised Handbook for Analyzing Jobs[.]" Opening Br. (Doc. 17) at 8; Response (Doc. 19) at 5. Plaintiff's counsel recognizes that because he "was not a vocational expert, he sought the opportunity to further question the vocational expert in light of these findings which highlighted an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles[.]" *Id.* at 7 (citing AR at 318–19). Plaintiff's request to reopen, however, "does not establish that the attorney replicated a methodology that was set forth by the VE at the hearing." *Wischmann*, 68 F.4th at 507. Rather, the attorney used a computer program and made selections that he deemed more

appropriate. As with any computer program that relies on user input, the algorithm is only as reliable as the data that goes in. *See Michael v. United States*, No. 2:19-CR-00015-DCN, 2020 WL 5633591, at *5 (D. Idaho Sept. 21, 2020) ("In the computer science arena, this is known as 'GIGO' (garbage in, garbage out); flawed data input produces nonsense output"). "[A]n ALJ need not discuss evidence from a lay witness that the lay witness is not competent to provide, [and] the uninterpreted data is not probative." *Wischmann*, 68 F.4th at 507 (quotations and citations omitted). The Court finds that the information contained in Plaintiff's request to reopen does not give rise to "give rise to a material inconsistency that the ALJ is required to resolve." *Id.* at 507–508. The Court further finds that substantial evidence supports the ALJ's determination, and remand is not required.

## IV.    CONCLUSION

Based on the foregoing, the Court finds the ALJ's Step Five analysis is free from legal error.

## V.    RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order AFFIRMING the Commissioner's decision.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2), Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Judge. If objections are filed, the parties should use the following case number: **CV-23-0413-TUC-JGZ**.

. . .

. . .

- 11 -

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 23rd day of July, 2024.

Eric J. Markovich
United States Magistrate Judge